## Ricketts v. American Insurance Union.

*Ella Graubart*, for plaintiff; *Langfitt & Langfitt*, for defendant.

SOFFEL, J., December 29, 1930.—

### Findings of fact.

1. On April 22, 1910, James E. Ricketts, husband of Mary Ricketts, plaintiff aforesaid, took out a benefit certificate with the Catholic Mutual Benefit Association, in the sum of $1000, being certificate No. 118477.

2. The plaintiff, Mary Ricketts, is the beneficiary in said certificate of insurance and was the wife of James E. Ricketts, the insured.

3. The defendant, American Insurance Union, a fraternal beneficial society, is a corporation of the State of Ohio, with its principal office in the City of Columbus, Ohio, and a branch office in the City of Pittsburgh, Pennsylvania.

4. By contract with the Insurance Commissioner of the State of New York, the said defendant, on or about May 11, 1920, took over the liabilities and rights of the Catholic Mutual Benefit Association.

5. The said James E. Ricketts agreed to this succession, became a member of the defendant society and paid the dues and assessments required up to January 14, 1922.

6. On or about January 14, 1922, the aforesaid insured, James E. Ricketts, disappeared from his home in Pittsburgh, Pennsylvania, and, though diligent inquiry and efforts have been made to locate him, he has not been heard of since that time. There is no cause or reason for his disappearing and abandoning his wife or concealing his whereabouts from his wife.

7. After his disappearance on January 14, 1922, and up to this date, James E. Ricketts has not reported to the cashier of his chapter his whereabouts, or given location or correct post office address, by street and number and city, at which he resides. He has in no way whatsoever communicated with either the defendant or his wife.

8. Immediately after the disappearance of the said James E. Ricketts, notice of his disappearance was sent to the principal office of the American Insurance Union.

9. The plaintiff, Mary Ricketts, continued to make payments from January 14, 1920, to December 9, 1929, when the defendant refused to accept any further premiums, alleging that the benefit certificate had lapsed by reason of section 1016 of the constitution and laws of the American Insurance Union.

10. The said plaintiff has paid the defendant since the disappearance of her husband the sum of $268.84, which the defendant has tendered back.

11. The certificate of the Catholic Mutual Benefit Association contains this provision:

"This certificate is issued upon the further condition that the said member complies in the future with the laws, rules and regulations now governing the said association and fund, or that may hereafter be enacted by the Supreme Council. . . ."

12. The contract between the American Insurance Union, defendant, and the Insurance Commissioner of the State of New York contains the following provisions:

"The party of the second part hereby agrees to accept as beneficial members and to insure and continue without medical, physical or other examination of any kind, the insurance of each and every beneficial member of said Supreme Council of the Catholic Mutual Benefit Association in good standing or who possessed the right of reinstatement at the date of the entry of said order or liquidation from midnight standard time at Hornell, Steuben County, New York, between the 15th day of May, 1920, and the 16th day of May, 1920, to midnight standard time at Hornell, Steuben County, New York, between the 31st day of May, 1920, and the 1st day of June, 1920, unless (a) such membership or insurance is terminated prior thereto by the refusal in writing of a member to accept such insurance, or by his failure to pay to a local cashier of the party of the second part duly appointed, the assessments and dues for May, 1920, made and due, and payable in accordance with the constitution, by-laws and certificates of the Supreme Council of the Catholic Mutual Benefit Association for the month of May, 1920, or (b) such membership and insurance is terminated by virtue of the acceptance prior to May 31, 1920, of this contract and the acceptance of membership and insurance under

the constitution and by-laws of the party of the second part from the date of said acceptance instead of continuing said membership and insurance to May 31, 1920, under the constitution and by-laws of the Supreme Council of the Catholic Mutual Benefit Association, in consideration for which insurance the party of the second part shall receive fifty per cent. of the amount collected of the cash assessment for April, 1920, heretofore made and levied by the Supreme Council of the Catholic Mutual Benefit Association upon its members."

13. The constitution and laws of the American Insurance Union contain the following provisions, adopted in 1917, and which have been in force continuously since then:

"Section 1016. Any member of the American Insurance Union who shall abscond, remove, depart or disappear from his home, or last place of residence, and remain one year, without reporting to the cashier of his chapter his whereabouts and giving location with correct postoffice address by street and number thereof and the city within which he resides, shall thereby lapse himself from membership in the society, and his certificate shall thereupon become null and void.

"No cashier, representative or officer shall receive from any person any monthly premium or chapter dues on account of any such person. Should any cashier or officer accept such premium in violation of this section, the society shall not be liable to such member or his beneficiary, except for the return of the premiums paid from and after the disappearance of the member."

"Section 604. No chapter or other subordinate body, nor any chapter, officer or member, or cashier or representative, shall have power or authority to waive any provision of the constitution and laws of the society, and the provisions of this section shall be binding upon the society and upon every officer and member thereof, and upon every beneficiary of a member or of a junior."

14. The General Code of Ohio contains the following provisions:

"Section 9481. (Waiver of constitution and laws of the society) The constitution and laws of the society may provide that no subordinate body, nor any of its subordinate officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the society, and the same shall be binding on the society and each and every member thereof and on all beneficiaries of members."

"Section 9494. (Waiver of the provisions of the laws) The constitution and laws of the association may provide that no subordinate body, nor any of its officers or members shall have the power or authority to waive any of the provisions of its laws and constitution, and this shall be binding on the association and every member thereof."

"Section 9469. (Certificate shall constitute agreement) Every certificate issued by any such society shall specify the amount of benefit provided thereby, and shall provide that the certificate, the charter or articles of incorporation, or, if a voluntary association, the articles of association, the constitution and laws of the society and the application for membership and medical examination, signed by the applicant and all amendments to each thereof, shall constitute the agreement between the society and the member, and copies of the same certified by the secretary of the society, or corresponding officer, shall be received in evidence of the terms and conditions thereof, and any changes, additions or amendments to such charter or articles of incorporation, or articles of association, if a voluntary association, constitution or laws duly made or enacted subsequent to the issuance of the benefit certificate shall bind the members and its beneficiaries, and shall govern and

control the agreement in all respects the same as though such changes, additions or amendments had been made prior to and were in force at the time of the application for membership."

*Conclusions of law.*

1. James E. Ricketts is dead as of January 14, 1929.

2. The laws of the State of Ohio, being the *lex loci*, determine the validity and reasonableness of the constitution and laws of the defendant corporation.

3. The Commonwealth of Pennsylvania, under article IV, section 1, of the Constitution of the United States, must give full faith and credit to the statutes of the State of Ohio and the decisions of its courts as to the validity and reasonableness of laws of a fraternal beneficiary organization incorporated in said state.

4. The rights of members in a fraternal beneficiary society are determined by a single law, the law of the state of domicile of the society. A citizen of the Commonwealth of Pennsylvania who becomes a member of a fraternal beneficiary society organized and existing under the laws of the State of Ohio, is governed by the laws of the society valid in the State of Ohio, and in a suit in Pennsylvania by the beneficiary, it may not be here adjudged that the laws of the society, valid and reasonable there, are unreasonable and, therefore, void.

5. When the rights and liabilities of the Catholic Mutual Benefit Association were taken over by the defendant, and James E. Ricketts thereafter paid premiums to said defendant until the time of his disappearance, he made himself subservient to the constitution and laws of the defendant.

6. Section 1016 of the constitution of the defendant is valid and reasonable, under sections 9481 and 9494 of Throckmorton's Annotated Code of Ohio, 1929, which, being in force when James E. Ricketts became a member of said society and at the time of his disappearance, is binding upon him and his beneficiaries.

*Discussion.*

On April 22, 1910, the plaintiff's husband, James E. Ricketts, took out a benefit certificate with the Catholic Mutual Benefit Association in the sum of $1000, of which the plaintiff, Mary Ricketts, was the beneficiary. In May, 1920, the Catholic Mutual Benefit Association became insolvent, and its rights and liabilities were taken over by the American Insurance Union, as set forth in a contract between the Superintendent of Insurance of New York and said American Insurance Union. The said James E. Ricketts thereafter paid premiums to the defendant until January 14, 1922. There is no evidence in the case that the said James E. Ricketts had personal knowledge of the terms of the contract whereby the defendant took over the Catholic Mutual Benefit Association, nor is there evidence that he personally knew of the constitution and laws of said defendant.

The disappearance of said insured was reported by the plaintiff to the said defendant, and thereafter she continued to pay premiums to defendant until December 9, 1929, when she was notified by this defendant that the policy was void and had lapsed under section 1016 of its constitution. The defendant offered at that time to pay to the plaintiff, and at the time of trial again made a formal tender, of all premiums paid by her since the disappearance of her husband. This was refused, and the plaintiff sued as beneficiary under the original certificate of the Catholic Benefit Association to recover the face value of the policy, to wit, the sum of $1000.

Counsel for plaintiff contends, first, that plaintiff is not bound by section 1016 of the defendant society because the same is unreasonable and, under the

decisions of the courts of Pennsylvania, cannot be maintained, because substantial rights which rest upon a contract cannot be abrogated by new by-laws, even where power to make them has been reserved. The case of Roblin *v.* Supreme Tent of the Knights of the Maccabees, 269 Pa. 139, *inter alia,* is cited. The court is of the opinion that the decision in this case does not apply to the case at bar. In the given case, the law in question was passed by the defendant September 21, 1917, when the member, James E. Ricketts, was alive. It was in full force and effect at the time the defendant took over the Catholic Mutual Benefit Association, and was part of the laws of said defendant in 1920, when James E. Ricketts voluntarily became a member of said organization. Whatever the rights of said insured may have been under the laws of the Catholic Mutual Benefit Association, he subjected himself to the laws of the defendant when he voluntarily became a member of that organization.

In Ferris *v.* American Insurance Union, 245 Mich. 548, 222 N. W. 744, the reasonableness and validity of section 1016 of defendant's constitution (cited *supra)* was under consideration. It was decided in that case, that this law, being valid under the statutes of Ohio, was binding on the courts of Michigan. Under the full faith and credit clause of the United States Constitution, a certificate issued by a fraternal benefit society organized in Ohio to a citizen of Michigan is governed by the laws of the society valid in Ohio, and such laws cannot be adjudged unreasonable and void in Michigan.

In McGovern *v.* Brotherhood of Locomotive Firemen, 12 Ohio C. C. (N. S.) 137, affirmed in 85 Ohio 460, it is held that a by-law of a fraternal benefit society organized under the laws of the State of Ohio, declaring that no liability should be incurred because of disappearance of a member, or because of the presumption of death arising therefrom, was reasonable and valid.

The Supreme Court of the United States, by Mr. Justice Holmes, in the case of Modern Woodmen *v.* Mixer, 267 U. S. 544, 551, states:

"The indivisible unity between the members of a corporation of this kind in respect of the fund from which their rights are to be enforced and the consequence that their rights must be determined by a single law, is elaborated in *Supreme Council of the Royal Arcanum v. Green,* 237 U. S. 531, 542. The act of becoming a member is something more than a contract, it is entering into a complex and abiding relation, and as marriage looks to domicil, membership looks to and must be governed by the law of the State granting the incorporation. We need not consider what other States may refuse to do, but we deem it established that they cannot attach to membership rights against the Company that are refused by the law of the domicil. It does not matter that the member joined in another State."

And of similar purport is the decision of the Supreme Court of the United States in the case of Royal Arcanum *v.* Green, 237 U. S. 531. Under these decisions, it is thus apparent that the question of validity and reasonableness of a law of a fraternal beneficiary society must be determined in accord with the *lex loci.*

Counsel for plaintiff argues, secondly, that by accepting payments of premiums for a period of practically seven years after it had knowledge of the disappearance of James E. Ricketts, the said defendant is estopped from asserting the law in question and has waived same.

Section 9481 (cited *supra)* of the General Code of Ohio permits a fraternal society to draft a law which denies subordinate bodies or subordinate members authority to waive provisions of the laws and constitution of said society. This statute has been sustained by the Ohio courts in Pete *v.* Woodmen of

the World, 5 Ohio ·C. C. (N. S.) 446, affirmed without opinion, 74 Ohio 445, and Geis *v.* Commercial Travelers, 9 Ohio App. 391.

Section 9494 of the General Code of Ohio (cited *supra)* permits a fraternal society to draft a law which denies subordinate bodies, officers or members, authority to waive any provisions of its laws and constitution, and provides further that the same shall be binding on the association members.

Sections 604 and 1016 of the constitution and laws of the defendant society are drafted in accord with the provisions of the General Code of Ohio, herein cited.

Notwithstanding the hardship that such a law works, as it does in the given case, the court is of the opinion that under the sections of the Ohio State Code the validity of this law cannot be questioned, and that under the decisions cited above the courts of Pennsylvania must accept this under the full faith and credit clause of the Constitution.

Over the objection of counsel for plaintiff, the court permitted the introduction in evidence of a certified copy of the constitution and laws of the defendant. Counsel for plaintiff cites to the court the Act of April 6, 1893, P. L. 7, section 2, which provides as follows:

"Within sixty days after the passage of this act all supreme or grand or other bodies which may be known to constitute the head of any fraternal beneficial society doing business within this Commonwealth, as provided in the first section of this act, shall file through its proper officers or representatives with the Insurance Commissioner a copy of their constitution and general laws, and annually any alterations, changes or amendments, whose duty it shall be to register them without charge in the Insurance Department as fraternal beneficial societies, and when so registered they shall be exempt from any and all fees and taxes imposed by existing laws upon insurance companies reporting to said department."

The said statute provides in section four that any fraternal beneficial society that fails to register, as required by the second section of the act, shall be prohibited from doing business in this state, and the officers of societies violating these requirements shall be deemed guilty of a misdemeanor, and upon conviction shall be fined not exceeding $100 for each offense.

Indirectly, it appears that in January, 1922, when the insured disappeared, the amendment here in question was not filed with the Insurance Commissioner of this state, but that the same was filed on March 3, 1923. This suit was commenced on November 4, 1930, and at that time the amendment had been filed with the Insurance Commissioner for seven years.

There is nothing in the case that affirmatively establishes the fact that James E. Ricketts personally knew or did not know of the existence of the amendment. Notwithstanding this fact, the court is of the opinion that the amendment in question is operative at least from the date of filing, and that its certification being in accord with section 9469 of the Ohio Code makes it admissible at the trial of this case.

There is just one other question in this case, and that is the determination of the exact time when James E. Ricketts may be said to be legally dead. In this jurisdiction, and practically all others, the presumption of death after seven years' absence and undiscoverable whereabouts is the rule of evidence. The presumption of life remains and continues during the entire seven-year period. "If there is evidence that the person has been subjected to some grave and specific peril, this may justify a presumption of death before the end of that time:" Henry, Trial Evidence, page 425. In the given case, there was evidence that James E. Ricketts was a rent collector for the American

Bridge Company of Pittsburgh, but there was nothing in the case which would justify the court in finding death prior to the expiration of the seven-year period: Mutual Benefit Company's Petition, Schoneman's Appeal, 174 Pa. 1. The court, therefore, finds James E. Ricketts dead as of January 14, 1929.

Under all the evidence and law in the case, the plaintiff's right to recover is limited to the premiums paid by her since the disappearance of her husband.

*Order.*

And now, to wit, December 29, 1930, judgment is entered in favor of the plaintiff in the sum of $268.84.

From William J. Aiken, Pittsburgh, Pa.